UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RONALD SALERNO, JR, | ) | CASE NO. 5:20-cv-1598 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| STEEL PLATE, LLC, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

The present dispute arises out of an employment agreement entered into between plaintiff

Ronald Salerno, Jr. ("Salerno") and defendant Steel Plate, LLC ("Steel Plate"). Now before the

Court is Steel Plate's motion to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6). (Doc.

No. 11 ["MTD"].) Salerno opposes the motion (Doc. No. 15 "[Opp'n]"), and Steel Plate has filed

a reply.[1] (Doc. No. 18 ["Reply"].) For the reasons that follow, the motion to dismiss is denied.

## I.  BACKGROUND

Salerno began his employment with Steel Plate in Tallmadge, Ohio in 2009. (Doc. No. 1-

1 (Complaint ["Compl."]) ¶ 6.) At the request of Steel Plate, Salerno relocated and began

---

[1] Salerno also moved for leave to file a sur-reply *instanter*, suggesting that Steel Plate has impermissibly raised "entirely new arguments" and made "material misstates of law" in its reply. (Doc. No. 19 at 135; *see* Doc. No. 19-1 (Proposed Sur-reply).) Steel Plate opposes the motion. (Doc. No. 20.) The Court finds that the issues addressed in the proposed sur-reply were first raised in Steel Plate's dispositive motion or in the memorandum in opposition. Further, contrary to Salerno's suggestion, citing additional authority in a reply to support of an argument previously raised in a motion or to counter an argument raised in an opposition brief does not constitute a new argument otherwise justify a sur-reply. *See William F. Shea, LLC v. Bonutti Research, Inc.*, No. 2:10-cv-615, 2011 WL 1256670, at *2 (S.D. Ohio Mar. 31, 2011) (offering additional authority in reply is not tantamount to raising a new argument); *Power Marketing Direct, Inc. v. Wilburn Moy*, No. 2:08-cv-826, 2008 WL 4949289, at *2 (S.D. Ohio Nov. 6, 2008) (denying motion for leave to file sur-reply because plaintiff was "responding in the reply memorandum to the argument Steel Plates raised in the memorandum in opposition"). For these reasons, Salerno's motion to file a sur-reply is denied.

working in the company's newly opened Pendergrass, Georgia facility in late 2015. (*Id*. ¶ 7.)

The parties entered into an employment agreement on April 11, 2016. (Doc. No. 1-2 (Employment Agreement ["Agreement"]).) While the Agreement recognized that Salerno's employment with Steel Plate remained at-will, it provided for certain specified compensation and benefits Salerno would receive in exchange for his efforts on behalf of Steel Plate. (Agreement at 20–22.[2]) Relevant to the present action, the Agreement also provided that Salerno would receive severance if his employment was terminated for reasons other than for cause. (*Id.* at 21–22.)

In July 2018, "due to serious and life threatening illnesses suffered by [his] son and wife, [Salerno] decided it would be in the best interests of his family to return to Northeast Ohio to live and continue to work for [Steel Plate]." (Compl. ¶ 21.) Eighteen months later, in December of 2019, Steel Plate reorganized Salerno's division. Salerno contends that this reorganization was the result of his decision to relocate his family to Ohio. (*Id.* ¶ 22.) He claims that, as a result of the reorganization, he had no choice but to quit. (*Id.* ¶ 24.) He levels several contentions in support of this assertion: that the compensation offered was insufficient to support his family, that many of his prior duties were reassigned to a recently-hired younger employee, and that the new role would have damaged his professional reputation. (*Id.* ¶¶ 22–24.)

When Steel Plate refused to pay him severance, Salerno filed suit in state court on June 12, 2020, raising four claims: breach of contract (Count I), unjust enrichment (Count II), quantum meruit (Count III), and constructive discharge (Count IV). This action was removed by Steel Plate to federal court on July 20, 2020 on grounds of complete diversity of citizenship. (*See*

---

[2] All page numbers refer to the page identification number generated by the Court's electronic docketing system.

Doc. No. 1 (Notice of Removal) at 1 (citing 28 U.S.C. § 1332(a).)

In his complaint, Salerno asserts that Steel Plate's refusal to provide him with a release

agreement and pay him severance is a breach of the Agreement. (Compl. ¶¶ 30–31.) Further, it is

Salerno's contention that—even if the Agreement does not entitle him to severance in the event

of his resignation—he can still show that he was terminated under the law by demonstrating that

he was constructively discharged. (*Id.* ¶¶ 44–46.) Salerno also maintains that he is entitled to

severance under theories of unjust enrichment and quantum meruit. Steel Plate denies that it

breached the Agreement and raises counterclaims for breach of contract and misappropriation of

trade secrets. (Doc. No. 12 (Answer and Counterclaims).)

## II. STANDARDS OF REVIEW

### A.     Motion to Dismiss Standard

Steel Plate moves for dismissal of Salerno's claims under Rule 12(b)(6) of the Federal

Rules of Civil Procedure. A Rule 12(b)(6) motion tests the sufficiency of the pleading. *Davis H.

Elliot Co., Inc. v. Caribbean Util. Co., Ltd.*, 513 F.2d 1176, 1182 (6th Cir. 1975). All allegations

of fact by the nonmoving party are accepted as true and construed in the light most favorable to

that party. *See Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) (citing *Meador v. Cabinet

for Human Res.*, 902 F.2d 474, 475 (6th Cir. 1990)). The Court, however, "need not accept as

true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th

Cir. 1999) (citing *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987)). Nor is

the Court required to accept as true complaint allegations that are contradicted by public records

and other evidentiary materials of which the Court may take judicial notice. *See Moody v.

CitiMortgage, Inc.*, 32 F. Supp. 3d 869, 874–75 (W.D. Mich. 2014) ("court may disregard

allegations in the complaint if contradicted by facts established by exhibits attached to the complaint[]”); *see also Williams v. CitiMortgage, Inc.*, 498 F. App’x 532, 536 (6th Cir. 2012) (“if a factual assertion in the pleadings is inconsistent with a document attached for support, the Court is to accept the facts as stated in the attached document[]”).

The sufficiency of the pleading is tested against the notice pleading requirements of Fed. R. Civ. P. 8(a)(2), which provides that a complaint must contain “a short and plain statement of the claim showing that the pleader is entitled to relief[.]” Although this standard is liberal, “[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to ‘state a claim to relief that is plausible on its face.’” *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A claim is facially plausible “when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.” *Id*. (citing *Twombly*, 550 U.S. at 556). If the plaintiff has not “nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed.” *Twombly*, 550 U.S. at 570.

In deciding a motion to dismiss under Rule 12(b)(6), the Court generally may not consider matters outside of the pleadings without converting the motion into a motion for summary judgment under Rule 56. As the Sixth Circuit has held, however, there are a number of exceptions to this rule. Indeed, it is well settled that, in ruling on a Rule 12 dispositive motion, a district court “may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant’s motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein.”

*Bassett v. Nat'l Coll. Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted); *see also Comm. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (court may consider documents that govern a party's rights and are necessarily incorporated by reference in the complaint on a motion to dismiss) (citations omitted).

### B.      Breach of Contract Standard

"Under Ohio law, the interpretation of written contract terms, including the determination of whether those terms are ambiguous, is a matter of law for initial determination by the court." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008) (citations omitted); *see Ohio Historical Soc'y v. Gen. Maint. & Eng'g Co.*, 583 N.E.2d 340, 345 (Ohio Ct. App. 1989). It is the role of the court to discern the intent of the parties, which is "presumed to reside in the language they choose to use in their agreement." *Savedoff*, 524 F.3d at 763 (quoting *Graham v. Drydock Coal Co.*, 667 N.E. 2d 949, 952 (Ohio 1996)); *see United States Fid. & Guar. Co. v. St. Elizabeth Med. Ctr.*, 716 N.E.2d 1201, 1208 (Ohio Ct. App. 1998).

"Contractual language is 'ambiguous' only where its meaning cannot be determined from the four corners of the agreement or where the language is susceptible of two or more reasonable interpretations." *Covington v. Lucia*, 784 N.E.2d 186, 190 (Ohio Ct. App. 2003) (citation omitted); *see Sec'y of USAF v. Commemorative Air Force*, 585 F.3d 895, 900 (6th Cir. 2009). When both parties offer "plausible interpretations of the agreement drawn from the contractual language itself [this] demonstrates that the provision is ambiguous." *Int'l Union UAW Local 91 v. Park-Ohio Indus., Inc.*, 876 F.2d 894, at *6 (6th Cir. 1989) (table decision).

In determining whether contractual language is ambiguous, the contract "must be construed as a whole." *Tri-State Grp., Inc. v. Ohio Edison Co.*, 782 N.E.2d 1240, 1246 (Ohio Ct.

App. 2002) (internal citation and quotation marks omitted). Further, "courts should give effect, if possible, to every provision therein contained, and if one construction of a doubtful condition written in a contract would make that condition meaningless, and it is possible to give it another construction that would give it meaning and purpose, then the latter construction must obtain." *Foster Wheeler Enviresponse, Inc. v. Franklin Cnty. Convention Facilities Auth.*, 678 N.E.2d 519, 526 (Ohio 1997) (internal citation and quotation marks omitted).

"The Court must look to the plain language of the contract, and only go beyond the plain language of the agreement to determine the rights and obligations of the parties if it is ambiguous." *Airlink Commc'ns, Inc. v. Owl Wireless, LLC*, No. 3:10 CV 2296, 2011 WL 4376123, at *2 (N.D. Ohio Sept. 20, 2011) (internal citations omitted). "'If ambiguity exists . . . the meaning of a contract [becomes] a question of fact.'" *In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d 265, 276 (6th Cir. 2019) (quoting *Books a Million, Inc. v. H & N Enters., Inc.*, 140 Supp. 2d 846, 854 (S.D. Ohio 2001) (further citation omitted)).

III. ANALYSIS

### A.     First Cause of Action: Breach of Contract

"A party breaches a contract if he fails to perform according to the terms of the contract or acts in a manner that is contrary to its provisions." *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (citation omitted). To succeed on his breach of contract claim under Ohio law, Salerno must establish that: (1) the parties had an employment contract, (2) that Salerno performed on the contract, (3) that Steel Plate breached the contract by not paying Salerno severance, and (4) that there are damages (here, the unpaid severance pay) from the breach. *See In re Fifth Third Early Access Cash Advance Litig.*, 925 F.3d at 276 (citing *Claris Ltd. v. Home*

6

*Dev. Servs., LLC*, 104 N.E.3d 1076, 1083 (Ohio Ct. App. 2018)). The parties disagree on the third and fourth elements—whether not paying Salerno severance after he voluntarily terminated his employment is a breach of the Agreement, and as such whether Salerno is entitled to damages.

Turning to the Agreement, Section 5 reads as follows:

> 5. <u>Severance Payment</u>. In the event Employee's employment with the Company is terminated without Cause, as defined herein, Company shall pay to Employee a severance payment equal to the average of the annual W-2 compensation earned by the Employee in the previous (3) completed calendar years within (30) days of said termination . . . , provided, however, in order for Employee to receive said severance payment, Employee must enter into a Severance and Release Agreement presented by the Company. For purposes of this Section "Cause" shall be determined by the Company and shall mean: (1) conviction of or a plea of guilty, or no contest, by Employee to a felony or misdemeanor involving fraud, embezzlement, theft, dishonesty, or other criminal conduct involving the Company; (2) neglect of Employee's duties or failure by Employee to perform or observe any material obligation of such employment; (3) commission by Employee of any act of fraud or theft with respect to the Company; (4) any material breach by the Employee of this Agreement or any other agreement between Employee and Company; (5) unsatisfactory performance by the Employee that is not remedied within thirty (30) days after written notice thereof from the Company; and (6) Employee's engagement in activities or course of conduct material and demonstrably detrimental to the best interests of the Company.

(Agreement at 21–22.) Because the Court must, if possible, give effect to every provision, the Court also considers Section 2 of the Agreement, which defines "at-will employment" and provides:

> 2. <u>At-will Employment</u>. Employee's employment with Company is "at-will". "At-will" is defined as allowing either Employee or Company to terminate the Agreement at any time, for any reason permitted by law, with or without cause and with or without notice.

(*Id*. at 20.)

Salerno argues that the plain language of Section 2 defines "terminate" as an event that

can be initiated by either party. He asserts that the section of the Agreement discussing severance (Section 5), in turn, fails to limit by whom the termination of employment must be initiated in order to trigger the section's rights and obligations. (Opp'n at 108.) Accordingly, he concludes that he was entitled to severance upon a termination of his employment by either party, so long as that termination was without cause. Salerno's interpretation seems to account for the language chosen by the parties.

But Steel Plate offers a contrary interpretation. While it acknowledges that either side may terminate the Agreement under Section 2, it insists that Section 5 clearly limits the right to severance to an event that happens to Salerno—when Salerno "is terminated without Cause, as defined herein[.]" (Agreement at 21.) According to Steel Plate, its interpretation is bolstered by the fact that each delineated circumstance describing a discharge for cause involves acts or misconduct by Salerno.[3] These restrictions on "with cause" only qualify Steel Plate's reasons to dismiss Salerno; they do not mention or restrict Salerno's possible reasons for leaving Steel Plate's employ or address any actions by Steel Plate that might precipitate Salerno's decision to leave. It is clear, Steel Plate argues, that Section 5 is limited to a discharge without cause *by Steel Plate*.

But the language of the Agreement does not explicitly contain such a limitation. As Salerno notes, Section 5 of the Agreement could have included the language "by the Employer"

---

[3] Specifically, under the severance provision, cause was defined as "(1) *conviction* of or a plea of guilty, or no contest, *by Employee* to a felony or misdemeanor involving fraud, embezzlement, theft, or dishonesty, or other criminal conduct involving the Company; (2) *neglect of Employee's duties* or *failure by Employee* to perform or observe any material obligation of such employment; (3) *commission by Employee* of any act of fraud or theft with respect to the Company; (4) any *material breach by the Employee* of this Agreement or any other agreement between Employee and Company; (5) *unsatisfactory performance by the Employee* that is not remedied within thirty (30) days after written notice thereof from the Company; and (6) *Employee's engagement* in activities or course of conduct material and demonstrably detrimental to the best interests of the Company." (*Id*. (emphasis added).)

after "terminate," but it did not. Although the limitations on "for cause" are certainly consistent with an intent to only permit severance in the event Steel Plate involuntarily separated Salerno from its employ, the Agreement, as written, also allows for the competing interpretation that severance was available upon a "without cause" termination by either party.

The Court finds that the Agreement is a poor candidate for resolution at this stage of the proceedings, where discovery has not taken place and the parties have not offered extrinsic evidence that might shed light on the parties' intent. *See Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 689 (E.D. Mich. 2012) ("A court should not choose between reasonable interpretations of ambiguous contract provisions when considering a motion to dismiss under Rule 12(b)(6).") (citation omitted); *see, e.g., N. Frozen Foods, Inc. v. Picciotti*, No. 95493, 2011 WL 1935816, at \*3 (Ohio Ct. App. May 19, 2011) (ambiguities in contract precluded a determination of the intent of the parties pursuant to a motion for judgment on the pleadings); *see also Allason v. Gailey*, 939 N.E.2d 206, 212 (Ohio Ct. App. 2010) (holding that the trial court properly considered parol evidence where a contract term was susceptible to more than one reasonable interpretation). Accordingly, Steel Plate is not entitled to a Rule 12(6)(b) dismissal of Salerno's breach of contract claim.

### B. Fourth Cause of Action: Constructive Discharge

Steel Plate also seeks dismissal of the complaint's remaining claims. Court IV purports to raise a claim for constructive discharge. (Compl. ¶¶ 43–47.) It is Salerno's position that, even if he is only entitled to severance under the Agreement upon his termination, his voluntary resignation was, by law, a termination. He claims that, as a proximate result of his decision to relocate his family back to Ohio in 2018, Steel Plate reorganized his sales group in 2019. (*Id*. ¶

22.) According to the complaint, the terms of the reorganization resulted in "intolerable" conditions that "compelled [Salerno] to resign". (*Id*. ¶ 44.)

The Court has serious doubts as to whether Salerno can maintain a stand-alone constructive discharge claim under Ohio law. Allegations of constructive discharge are generally anchored to an underlying cause of action for employment discrimination or some other claim rising to the level of discrimination, such as a discharge in violation of public policy. *See Stark v. New Par*, 181 F.3d 103 (table), 1999 WL 357757, at *5 (6th Cir. May 11, 1999) (citing *Kroll v. The Disney Store*, 899 F. Supp. 344, 347 (E.D. Mich. 1995)); *Lucarell v. Nationwide Mut. Ins. Co.*, 44 N.E.3d 319, 330–31 (Ohio Ct. App. 2015), *rev'd on other grounds*, 97 N.E.3d 458 (Ohio 2018)); *see also Blackwell v. Prod. Action Int'l, Inc*., No. 04-cv-231, 2006 WL 3747519, at *15 (E.D. Ky. Dec. 18, 2006) (noting that "[c]onstructive discharge is not a separate cause of action; there must be an underlying action for employment discrimination") (quotation marks and citation omitted); *see, e.g., Guy v. Bd. of Educ. Rock Hill Local Sch. Dist*., No. 1:18-cv-893, 2020 WL 2838508, at *8 (S.D. Ohio May 31, 2020) (dismissing constructive discharge claim that did not raise a claim for discrimination).

Salerno has not alleged discrimination, nor has he alleged that he was forced to resign in violation of a clear public policy manifested in federal or state law. While he makes passing reference to a younger employee who assumed some of his previous duties, he does raise an age discrimination claim or otherwise allege that the restructuring was the result of age discrimination. Rather, Salerno affirmatively asserts that his decision to relocate his family was the proximate cause of Steel Plate's decision to restructure. (*See* Compl. ¶ 22.)

Salerno notes that some courts have applied constructive discharge in the context of a

10

breach of an employment agreement, but those cases generally involve employment contracts

that altered the terms of the employment relationship in such a way that the employee was no

longer considered at-will.[4] *See, e.g., Fleming v. Kent State Univ.*, 17 N.E.3d 620, 622 (Ohio Ct.

App. 2014) (employment contract specifying a 28-month term and a guaranteed annual salary of

$71,500.00 supported a breach of contract claim based on constructive discharge). In contrast,

the parties' Agreement is clear that Salerno remained an "at-will" employee and appears to

provide that Steel Plate retained the right alter the terms of his employment including

compensation. (*See* Agreement ¶¶ 1–3.)

Nevertheless, because this case is continuing with discovery, the Court will permit the

constructive discharge claim to remain for the time being. As with the contract claim, the parties

are free to revisit the viability of the constructive discharge claim on summary judgment.

### C.    Second/Third Causes of Action: Unjust Enrichment/Quantum Meruit

The second and third causes of action purport to raise claims of unjust enrichment and

quantum meruit, respectively. (Compl. ¶¶ 33–42.) Both claims are premised on the terms of the

Agreement and allege that:

> Plaintiff conferred a benefit upon [d]efendant, to wit, devoting his best efforts and
> entire working time, skill and experience to advancing and rendering profitable
> the interests of [d]efendant at a contractually agreed upon price, including the
> compensation set forth in Exhibit A of the Agreement and, in the absence of
> cause, the severance payment set forth in Section 5 of the Agreement regardless
> of how [p]laintiff's employment was terminated or by whom.

(Compl. ¶ 34; *see id.* ¶ 39.)

---

[4] The distinction is important as at-will employees can generally be discharged "for good cause, bad cause, or no cause at all. . . . The act of terminating an at-will employee's relationship with an employer generally does not give rise to an action for damages." *See Lucarell*, 44 N.E.3d at 330–31 (requiring allegations of constructive discharge by at-will employees to be tied to employer conduct tantamount to a violation of public policy).

Steel Plate seeks dismissal of these claims on the theory that Salerno cannot obtain equitable relief on a claim based on an express contract. "Under Ohio law, absent fraud, illegality, or bad faith, a party to an express contract may not bring a claim for equitable relief, particularly when the agreement contains a provision governing the allegedly inequitable conduct at issue." *Comtide Holdings, LLC v. Booth Creek Mgmt. Corp.*, 554 F. Supp. 2d 821, 827 (S.D. Ohio 2008), *rev'd and remanded on other grounds*, 335 F. App'x 587 (6th Cir. 2009); *see Son v. Coal Equity, Inc.*, 122 F. App'x 797, 801 (6th Cir. 2004) ("*Quantum meruit* is an equitable doctrine that, in the absence of an express contract between the parties, "requires a defendant to pay a plaintiff the reasonable value of services performed for the defendant.") (quoting *United States v. Snider,* 779 F.2d 1151, 1159 (6th Cir. 1985)); *see also Berger Enters. v. Zurich Am. Ins. Co.*, 845 F. Supp. 2d 809, 821–22 (E.D. Mich. 2012) (noting that "under Ohio law a party may not generally maintain claims based on there being an implied contract [such as quantum meruit] at the same time it maintains claims based on an expressed contract").

In this case, the right to severance is derived from Section 5 of the Agreement, and the tort claims rely exclusively on this contractual provision as the basis for tort relief. Under these circumstances, it appears likely that any remedy Salerno has lies in contract law and not in equity. However, given the uncertainty surrounding the contract claim, the Court finds that the better course is to permit the alternatively pled tort claims to remain in play for now. *See, e.g., Son of Coal*, 122 F. App'x at 801 (allowing alternatively pled tort claims to proceed on remand where it was unclear whether there existed a binding contract between the parties).

12

## IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is denied. By separate order, the

Court will set this matter for a case management conference.

**IT IS SO ORDERED**.


Dated: March 19, 2021

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**